```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
THOMAS PIENKOS,

              Plaintiff,              MEMORANDUM & ORDER
                                      21-CV-0223 (JS)
     -against-

COMMISSIONER OF SOCIAL SECURITY,[1]

              Defendant.
---------------------------------X
APPEARANCES
For Plaintiff:      Christopher J. Bowes, Esq.
                    54 Cobblestone Drive
                    Shoreham, New York  11786

For Defendant:      Sarah E. Preston, Esq.
                    Special Assistant U.S. Attorney
                    United States Attorney's Office
                    601 East 12th Street, Room 965
                    Kansas City, Missouri  64106-2898
```

SEYBERT, District Judge:

Plaintiff Thomas Pienkos ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the denial of his application for Social Security Disability Insurance Benefits by the Commissioner of Social Security (the "Commissioner"[2]). (See

---

[1] In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, the Clerk of Court is directed to amend the caption in this action, generically identifying the Defendant as "Commissioner of Social Security".

[2] Herein, the Court may refer to the Social Security Administration as the "Agency".

Compl., ECF No. 1, ¶ 1.)  Pending before the Court are Plaintiff's Motion for Judgment on the Pleadings, and the Commissioner's Cross-Motion.  (See Motion, ECF No. 12; see also Support Memo, ECF No. 13; Cross Motion, ECF No. 17; Cross-Support Memo, ECF No. 17-1; Reply, ECF No. 19.)  For the following reasons, Plaintiff's Motion is GRANTED in part and DENIED in part, and the Commissioner's Cross-Motion is GRANTED.

BACKGROUND[3]

I.  Procedural History

On October 23, 2013, Plaintiff completed an application for disability insurance benefits alleging disability as of September 1, 2013, due to a cancerous blood disease/essential thrombocythemia, a severe heart attack, osteomyelitis, and depression.  (R. 79-80.)  After Plaintiff's claim was denied, he requested a hearing before an Administrative Law Judge ("ALJ").  (R. 99-100.)  On July 26, 2016, accompanied by a representative, Plaintiff appeared for a hearing before ALJ Patrick Kilgannon.  (R. 56.)  Vocational expert ("VE") Dale Pasculli testified at the hearing.  (R. 70-77.)

---

[3] The background is derived from the Administrative Transcript filed by the Commissioner on September 1, 2021.  (See ECF No. 9.) For purposes of this Memorandum and Order, familiarity with the administrative record is presumed.  Hereafter, the Administrative Transcript will be denoted "R."

2

In a September 28, 2016 decision, the ALJ found Plaintiff was not disabled. (R. 16-26.) On February 27, 2018, the Agency's Appeals Council denied Plaintiff's request for review; therefore, the ALJ's decision became the final decision of the Commissioner (hereafter, the "2016 Final Decision"). (R. 1-6.)

On April 4, 2018, Plaintiff initiated a civil action challenging the 2016 Final Decision. (R. 707-709; see also Pienkos v. Commn'r, No. 18-CV-2053, Compl. (E.D.N.Y. Apr. 4, 2018).) On April 4, 2019, the District Court "SO ORDERED" the parties' Stipulation regarding the reversal and remand of the 2016 Final Decision. (R. 714-715.) In accordance with the terms of the Stipulation, the ALJ was ordered to: (1) offer the Plaintiff the opportunity for a new hearing; (2) take further action to complete the administrative record; and (3) issue a new decision. (R. 715.) Thereafter, the case was remanded back to an ALJ. (R. 722-725.)

On November 5, 2019, accompanied by a representative, Plaintiff appeared for his remand hearing before the ALJ (hereafter, the "2019 Disability Hearing"). (R. 658-660.) Dr. Dorothy Kunstadt, a medical expert who had not examined Plaintiff, testified at said Hearing (R. 660-696), as did VE Pasculli. (Id.)

Afterwards, on July 9, 2020, the ALJ requested the professional opinion of Dr. Steven Shilling, a medical expert, regarding Plaintiff's disability claim; said request, in the form of interrogatories, was accompanied by selected evidence from the

3

record. (R. 1453.) On July 13, 2020, Dr. Shilling provided the requested opinion in the form of interrogatory responses (hereafter, the "Shilling Opinion"). (R. 1454-1465.) Thereafter, on July 20, 2020, the ALJ proposed to Plaintiff that the Shilling Opinion be included in the record; Plaintiff was afforded the opportunity to challenge the Shilling Opinion by way of a supplemental hearing. (R. 1134-1135.) On August 4, 2020, Plaintiff objected to the Shilling Opinion being admitted into the record and requested "a supplemental hearing to question Dr. Shilling's qualifications and his opinion." (R. 1153.) On August 28, 2020, Plaintiff renewed his objection to the inclusion of the Shilling Opinion into the record:

> The residual functional capacity assessment posed to the vocational expert reflects Dr. Steven Shilling's opinion and we therefore must renew our objection to your Honor's reliance on the residual functional capacity assessment of Dr. Shilling. He is not actively treating patients and the history [of] disciplinary action against him by the licensing board makes him unqualified to serve as an expert. Moreover, his opinion was explicitly limited to cardiology and he advises that he cannot comment on hematology, which is [Plaintiff's] main problem.

(R. 1172-1173.) It is undisputed no supplemental hearing was scheduled. (See Support Memo at 21; Cross-Support Memo at 1, 2.) Therefore, Plaintiff was unable to cross-examine Dr. Shilling. (R. 1134, 1153.)

4

In a September 17, 2020 decision, once more the ALJ found Plaintiff was not disabled (hereafter, the "2020 Decision"). (R. 629-649.) In it, the ALJ "accorded great weight" to the Shilling Opinion, concluding it was "consistent with the consultative examining opinions and the expert cardiology opinions." (Id.) "Sixty days later, that decision became the 'final decision' of the Commissioner subject to judicial review." (Cross-Support Memo at 2 (citing 20 C.F.R. § 404.984).)

On January 14, 2021, Plaintiff initiated the instant action. (See Compl.) Thereafter, on December 3, 2021, Plaintiff moved for judgment on the pleadings. He "challeng[es] the Commissioner's final administrative decision that discounts the opinions of his treating hematologist and cardiologists in favor of [the Agency]'s medical advisors, none of whom have examined him and none whose opinions rise to the level of substantial medical evidence." (Support Memo at 1.) Plaintiff argues "[b]ecause the persuasive evidence of record demonstrates" he "lacks the capacity to return to his past relevant work or perform an 8-hour workday," an order should issue directing the Commissioner "find him disabled and entitled to disability benefits." (Id.; see also id. at 25 (requesting case be remanded "for additional administrative proceedings solely for calculation of disability benefits due" Plaintiff).) In response, the Commissioner cross-moved for judgment on the pleadings, acknowledging "remand is necessary due

5

to the ALJ's procedural legal error," but asserting "because conflicts remain in the evidence -- specifically in the appropriate weight to be assigned to the opinion of Dr. Shilling, one of multiple opinions and other evidence supporting the finding of non-disability -- remand for further administrative proceedings is the proper remedy." (Cross-Support Memo at 1, 24.) In reply, Plaintiff contends, "[g]iven the persuasive proof of actual disability outlined by [his] treating and examining physicians and the repeated and unjustifiable delays visited upon [him] by the Commissioner," "an Order reversing the final decision by the Commissioner and finding Plaintiff 'disabled' . . . and entitled to disability benefits" is warranted. (Reply at 6.)

II.  The Subject 2020 Decision

   A.  Plaintiff's Testimonial Evidence

In support of his claim, Plaintiff testified at the 2019 Disability Hearing, stating, <u>inter alia</u>, the following. Plaintiff was born in 1959, and was 60 years old when the 2019 Disability Hearing was held. (R. 79, 671.) He completed college in 1986. (R. 176.)

Plaintiff testified he had been unable to work since September 1, 2013 due to his disability and the side effects from his medication. (R. 672-681; <u>see also</u> R. 175 (Disability Report listing all the physical and mental conditions limiting ability to work: cancerous blood disease/essential thrombocythemia, severe

6

heart attack, osteomyelitis, depression).)  Before September 1, 2013, Plaintiff worked as a vice president of operations at an IT company, and then as a senior vice president of operations at a large real estate company, which oversaw 16 luxury condominium buildings in the New York City tri-state area, with approximately 500 employees under him. (R. 176, 648.)  His was a high-stressed job requiring him to work 50-to-70 hours a week. (R. 1086.)  Among other things, Plaintiff's job: saw him lifting and carrying 10 pounds frequently and 20 pounds at times; required frequent (i.e., 2.5 to 5.5 hours) standing, walking, sitting, balancing, and bending (R. 294, 423); required travel to multiple properties to ensure proper maintenance and conduct on-site inspection of building systems (R. 294, 424); and, required occasional (i.e., 15 minutes to 2.5 hours) kneeling, crouching, crawling, reaching, climbing, and driving (id.).

Concerning his limitations, Plaintiff claimed he had problems standing or walking for "any length of time" due to swelling and growths in his limbs. (R. 674-676.)  He testified it is "virtually impossible to stand up," due to the infections and swellings from the growths on his legs. (R. 680.)  To combat the swelling, Plaintiff explained he must lay on the floor with his feet elevated up a wall. (R. 679.)  Plaintiff further testified his medication, Anagrelide, causes diarrhea every two-to-three hours, thereby requires him to "stay close to a bathroom."

7

(R. 677.) Moreover, due to tingling in his hands and feet, Plaintiff claimed he did not sleep well, waking up every 90 minutes to two hours, which contributes to his experiencing chronic fatigue. (R. 675-678.)

    B.   Medical Evidence[4]

        1.   Dr. Dorothy Kunstadt's Testimony

At the 2019 Disability Hearing, Dr. Kunstadt, a new medical expert who had not examined Plaintiff, opined Plaintiff did not meet the criteria for Social Security disability. (R. 664.) While she acknowledged Plaintiff had functional limitations and recommended he "stay away from heavy, physically, heavy work", Dr. Kunstadt stated Plaintiff "can do . . . light work and moderate work." (R. 664, 666.) Despite rendering this opinion, Dr. Kunstadt admitted she was not familiar with the side effects of Anagrelide. (R. 666.)

        2.   The Shilling Opinion

After the hearing, the ALJ relied upon Dr. Shilling's interrogatory responses, i.e., the Shilling Opinion, in rendering the 2020 Decision. (R. 646.) In his responses, Dr. Shilling noted Plaintiff's ejection fraction was normal and he performed above-average for his age group in his exercise stress testing.

---

[4] Because Plaintiff's disability claim had been previously remanded, there was already prior medical expert testimony in the record. (R. 660.)

8

(Id.)  Dr. Shilling concluded Plaintiff did not have ischemia or arrhythmias during testing and his "generally asymptomatic status on examination does not support a showing that it caused functional limits." (Id.)  As to Plaintiff's myocardial damage, Dr. Shilling described it as "minimal." (Id.)

Dr. Shilling opined Plaintiff could: perform an eroded range of light exertional work, sit for two hours, stand for one hour, and walk for 30 minutes at one time; occasionally climb ramps and stairs, crouch, and crawl; and frequently balance, stoop, and kneel.  (R. 647.)  However, the Doctor also determined Plaintiff be prohibited from climbing ladders or scaffolds. (Id.)

    C.    The VE's Testimony

The VE who previously testified at Plaintiff's prior disability hearing, confirmed at the 2019 Disability Hearing that Plaintiff's past work as a vice president of operations was sedentary, and that his prior role as manager was light.  (R. 685.) Plaintiff's counsel questioned the VE whether an individual who "had to elevate their legs" or "needed to be close to a bathroom for a period of two to three hours a day" would be affected in "their ability to perform past relevant work."  (R. 689-692.)  To both inquiries, the VE testified, "Yes, they will be unable to perform it."  (Id.)

9

D. <u>The ALJ's 2020 Decision</u>

As stated <u>supra</u>, Plaintiff objected to the ALJ's consideration of the Shilling Opinion. (<u>See</u> R. 1153 (citing R. 1137-1152).) In overruling Plaintiff's objection to the Shilling Opinion, the ALJ included the following preface in his 2020 Decision:

> The undersigned has considered counsel's objection to Dr. Shilling's opinion based upon his area of expertise, and his declination to assess non-cardiac side effects of the claimant's thrombocytopenia medication. Dr. Shilling is currently qualified as a licensed cardiologist, and provided a curriculum vitae outlining his education and work experience. <u>He specifically restricted his opinion to cardiac matters within the scope of his expertise</u>. His opinion is generally consistent with those of Drs. Galst and Kunstadt and supported by detailed cites to the record. It is one of many components considered in formulating the residual functional capacity.

(2020 Decision at 1-2 (R. 629-630) (emphasis added).) The ALJ "accorded great weight" to the Shilling Opinion, concluding it was "consistent with the consultative examining opinions and the expert cardiology opinions." (<u>Id.</u> at 19 (R. 647).)

As to Plaintiff's complaints regarding the side effects of Anagrelide, the ALJ was not persuaded they warranted finding Plaintiff was disabled. (<u>See, e.g.</u>, 2020 Decision at 19-20 (R. 647-648).) His determination was based in part upon Dr. Kunstadt's opinion:

> Dr. Kunstadt listened to the claimant testify at length, and maintained her opinion, noting that his severe impairments did not typically cause the symptoms he testified to, and that they were not generally reflected in complaints to his practitioners with the extremity he described in the hearing. Her opinion was well supported by an explanation and a review of the complete record <u>to that point</u>, and comports with the other function by function analyses of record. It is entitled to significant weight.

(<u>Id.</u> at 18 (R. 646) (emphasis added).) The ALJ further elucidated:

> The claimant stated that he needs to be near a bathroom for three hours after each of his twice-daily doses of anagrelide, but he rarely complained of this side effect at all in the treatment setting, and never described it at this frequency or intensity to his practitioners. It is noteworthy that the claimant was continued on maximal doses of medication during the long periods where he denied the side effects he alleges primarily debilitate him. He was also not offered any adjuvant therapy to ease them.

(<u>Id.</u> at 19 (R. 647).) In sum, the ALJ determined Plaintiff retained an RFC for light work, stating:

> [t]o the extent the claimant experiences better-documented side effects from his medications such as lightheadedness, or the growth on his left foot, or insomnia, he has been limited to an eroded range of light exertional work where he is mostly seated, with reduced standing and walking. There is no gait or strength impairment to substantiate this but the claimant's description of fatigue is credible and has been exertionally addressed. This also accounts for bouts of diarrhea to the minimal extent they are reflected in the record. Joint pains and infrequent lesions have been accommodated through postural, manipulative, and

11

>     environmental limits.  Potential balance and
>     fall risks have been addressed.  This residual
>     functional capacity accounts for all of the
>     claimant's stated symptoms, but only to the
>     extent they have an established presence in
>     the medical record.

(Id. at 20 (R. 648).)  The ALJ found Plaintiff's RFC to be "consistent with and supported by the observations of treating sources in the medical records, the opinions to the extent they were accorded weight, and the claimant's own statements regarding daily activities and abilities, to the extent they were found consistent with the medical evidence."  (Id.)

## DISCUSSION

I. Standard of Review

In reviewing a final decision of the Commissioner, a district court must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." Rucker v. Kijakazi, 48 F.4th 86, 90-91 (2d Cir. 2022) (quoting Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019)).  District courts will overturn an ALJ's decision only if the ALJ applied an incorrect legal standard, or if the ALJ's ruling was not supported by substantial evidence.  See id. (citing Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012)).  "[S]ubstantial evidence . . . means such relevant evidence as a reasonable mind might accept as

12

adequate to support a conclusion." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

II. The Instant Case

Here, the Parties agree that remand is necessary; the only issue is whether the remand should be for a determination of benefits only, as advocated by Plaintiff (see Support Memo at 25), or for further administrative proceedings, as requested by the Commissioner (see Cross-Support Memo at 24-25). For the reasons that follow, the Court is remanding this case for further administrative proceedings.

Recently, this Court remanded another Social Security disability case to the Commissioner for further administrative proceedings. See Cudak v. Comm'r of Soc. Sec., No. 21-CV-1250, 2025 WL 341930 (E.D.N.Y. Jan. 30, 2025). In doing so, the Court stated, "A remand solely for the calculation of benefits is 'an extraordinary action and is only proper when further development of the record would serve no purpose.'" Id. at *2 (quoting Rivera v. Barnhart, 379 F. Supp. 2d 599, 604 (S.D.N.Y. 2005)); see also Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir. 1999) (stating remand for the calculation of benefits is appropriate where the Court "ha[s] no apparent basis to conclude that a more complete record might support the Commissioner's decision")). Moreover, this Court observed: "[W]here, as here, the 'evidence in the record is

13

mixed' as to a Plaintiff's disability or 'level of functioning,' such evidence is for the ALJ to evaluate on remand, not the District Court." Id. (citing Murphy v. Saul, No. 20-CV-261, 2021 WL 1318044, at *1 (E.D.N.Y. Apr. 8, 2021) (finding remand solely for the calculation of benefits inappropriate "where the evidence in the record [was] mixed as to when the claimant became disabled")). Similarly, "[s]uch a remedy is only appropriate 'when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose.'" Patel v. Colvin, No. 10-CV-4617, 2013 WL 387234, at *10 (E.D.N.Y. July 25, 2013) (quoting Pratts v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).

Relatedly, this Court has also remanded a Social Security disability case back to the Commissioner where the ALJ did not properly develop the record, i.e., discounting a treating physician's medical opinion where the doctor failed to include a function-by-function analysis in reaching his medical opinion. See Kelly v. Comm'r of Soc. Sec., No. 20-CV-5318, 2024 WL 5120051, at *12 (E.D.N.Y. Dec. 16, 2024); see also generally Daniela B. v. Kijakazi, 675 F. Supp. 3d 305, 316 (E.D.N.Y. May 30, 2023) (explaining ALJ has an "affirmative duty to recontact a medical expert if an ALJ makes an initial determination that a medical expert's opinions are vague or appear to be inconsistent with their examination notes").

14

In the instant case, upon review of the Parties' submissions, the Administrative Transcript, and the 2020 Decision, the Court does not find persuasive proof of disability, thereby warranting a remand solely to calculate benefits. Rather, at best, the record evidence is mixed. In that vein, it also appears the ALJ did not properly develop the record, as is his duty. The Court highlights two examples. First, as to Dr. Gabig: The ALJ stated, inter alia, that, in November 2016, Dr. Gabig noted Plaintiff had many significant side effects from his medications (see 2020 Decision at 18 (R. 646)), to which the ALJ gave limited weight. The ALJ also stated that, in 2018, Dr. Gabig noted Plaintiff was suffering from Anagrelide "toxicity symptoms consisting of diarrhea, anorexia, weight loss, and light headedness", to which notation the ALJ gave short shrift, further stating, "the claimant consistently denied lightheadedness at other visits, and did not mention diarrhea to [Dr. Gabig] for years before this notation." (Id. at 15.) At a minimum, the term "toxicity" suggests a build-up over time; given Dr. Gabig's 2016 observation regarding Plaintiff's medications, the Doctor's subsequent and consistent 2018 observation should have prompted some follow-up with the Doctor to provide, at a minimum, clarity as to his opinions. See, e.g., Kelly, 2024 WL 5120051, at *12.

Second, as to Dr. Jeremias: The ALJ afforded the Doctor's November 2016 opinion that Plaintiff "could not return to

15

his 'stressful and demanding work environment,'" in which the Doctor further opined Plaintiff "had 'severe limitations' in connection with his medical conditions and medications", "minimal weight" since Dr. Jeremias did "not actually describing any of them in a function by function by function analysis." (2020 Decision at 18 (R. 646).) As this Court has stated:

> "Several district courts in this Circuit have remarked that a treating physician's failure to include a function-by-function analysis in reaching a medical opinion is 'not a good reason for discounting' that opinion." Patrick B. v. Comm'r of Soc. Sec., No. 3:19-CV-1697, 2021 WL 1100177, at *16 (D. Conn. Mar. 23, 2021) (citing Parker v. Comm'r of Soc. Sec. Admin., No. 18-CV-3814, 2019 WL 4386050, at *8 (S.D.N.Y. Sept. 13, 2019); Moreau v. Berryhill, No. 3:17-CV-0396, 2018 WL 1316197, at *11-13 (D. Conn. Mar. 14, 2018); Mondschein v. Saul, No. 3:19-CV-1019, 2020 WL 4364058, at *8 (D. Conn. July 30, 2020)). "Instead, an ALJ might ask that treating physician to supplement the record with a more specific opinion." Id.

Kelly, 2024 WL 5120051, at *12 (further citation omitted). Here, the ALJ sought no such supplement; hence, upon the record presented there is no good reason for the ALJ to have discounted Dr. Jeremias' November 2016 opinion. Thus, the need for the ALJ to further develop the record provides an additional basis for remanding this case for further administrative proceedings.

"Such proceedings shall be conducted within 120 days of this Order. If, upon remand, the ALJ denies Plaintiff's claim,

16

the Commissioner shall issue a final decision within 60 days of any appeal of that denial." Cudak, 2025 WL 341930, at *2.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED:**

I.   Plaintiff's Motion (ECF No. 12) is GRANTED in part and DENIED in part, and

II.  The Commissioner's Cross-Motion (ECF No. 17) is GRANTED, such that the ALJ's judgment is reversed, and this matter is REMANDED for proceedings consistent with this Memorandum and Order.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February 21, 2025
       Central Islip, New York